IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1120 INDUSTRIAL BOULEVARD, INC. | : | CIVIL ACTION |
| t/a 1120 INDUSTRIAL BOULEVARD | : | |
| ASSOCIATES | : | |
| | : | |
| v. | : | |
| | : | NO.  14-2653 |
| APRIA HEALTHCARE, INC. | : | |

_____

| | | |
|---|---|---|
| 1120 INDUSTRIAL BOULEVARD, INC. | : | |
| t/a 1120 INDUSTRIAL BOULEVARD | : | |
| ASSOCIATES | : | |
| | : | |
| v. | : | |
| | : | |
| APRIA HEALTHCARE, INC. | : | NO.  14-2953 |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                          **October 31, 2014**

### Introduction

In this breach of contract action based on a commercial lease, the plaintiff, 1120 Industrial Boulevard, Inc., t/a 1120 Industrial Boulevard Associates, ("1120") contends that Apria Healthcare, Inc. ("Apria") breached the lease by failing to pay rent and restore the property to its original condition.  In moving for summary judgment, it argues that the lease was automatically extended by the warranty provision in the assignment executed by Apria, 1120 and Praxair Healthcare Services, Inc. ("Praxair"), Apria's predecessor in interest.  It relies on language in the assignment that Apria contends was surreptitiously added by 1120's principal, Mark Hankin.  Apria has moved for summary judgment, contending that the warranty provision did not nullify the timely expiration notice sent by

Praxair. Consequently, according to Apria, it did not breach the lease when it vacated the premises. 1120 and Hankin also move for summary judgment on Apria's counterclaims for fraud in the inducement and breach of contract.

Because we conclude that the warranty provision did not nullify and supersede the expiration notice, we shall deny 1120's motion for summary judgment and grant Apria's motion for summary judgment. Apria has failed to produce evidence showing that 1120 and Hankin made a false misrepresentation. There remains a genuine dispute whether Apria complied with its restoration obligations under the lease. Therefore, 1120 and Hankin's motion will be granted in part and denied in part.

## Factual Background

To provide the parties with the basis for our ruling as early as possible without postponing the trial, we do not write a comprehensive opinion reciting all of the facts and legal reasoning. Instead, we refer only to those facts necessary to explain our decision. A more detailed opinion will issue later.

On September 1, 2005, 1120 and Praxair entered into a lease of the commercial real property known as Section 3 of 1120 Industrial Boulevard, Southampton, Pennsylvania ("Premises"). The lease was for a six-year term, commencing on November 1, 2005, and ending on November 30, 2011. Apria Appx. 49 (Lease) at ¶ 2.A(i). The lease contained a notice of termination clause that provided that the lease would continue for an additional one year term unless notice of termination was given one year prior to the original termination date. Lease ¶ 25. On July 29, 2010, Praxair sent 1120 a timely expiration notice, indicating that the lease would terminate at the end of the lease term of November 30, 2011. *See* Pl.'s Ex. D (First Termination Notice).

On February 1, 2011, Apria and Praxair, both represented by counsel, entered into a written asset purchase agreement by which Apria purchased the assets of Praxair.  As part of that agreement, Apria assumed various leases from Praxair. In assuming the various leases, Apria developed a form assignment and assumption agreement. Paragraph four of the Form Assignment and Assumption Agreement contained a warranty which read:

> Warranty.  Assignor represents and warrants to Assignee as of the date hereof and as of the Effective Date that the Lease has not been modified or amended, the Lease is in full force and effect, the Lease has not been assigned or otherwise encumbered and, no default has occurred or is continuing, and no event has occurred or condition exists which would, with the giving of notice or the expiration of any grace period, constitute a default under the Lease.

Pl.'s Ex. F (Form Assignment and Assumption Agreement) ¶ 4.

On February 11, 2011, Praxair forwarded to 1120 a draft assignment and assumption agreement consisting of four pages.  See Pl.'s Ex. F.  In response, 1120 insisted on the following changes: (a) a warrant of attorney to confess judgment clause; (b) Pennsylvania rather than Delaware law would be the governing law; (c) Praxair would provide a surety for Apria's obligations under the lease; and (d) the warranty that the lease had not been terminated.  These requirements were included in 1120's revisions to the draft agreement. The changes proposed by 1120 included revisions to the warranty provision in paragraph 4 as follows:

> 4. Warranty.  Assignor represents and warrants to Assignee as of the date hereof and as of the Assignment Effective Date that the Lease has not been terminated, modified or amended, the Lease is in full force and effect, the Lease has not been assigned or otherwise encumbered and, no default has occurred or is continuing and no event has occurred or condition exists which would, with the giving of notice or the expiration of any grace period, constitute a default under the Lease.

3

> The above notwithstanding, as of March 4, 2011, Assignor owes Landlord Fifteen Thousand Three Hundred Sixteen and 64/100 Dollars ($15,316.64) in Additional Rent. (See Detailed Aged Receivables Report attached hereto as Exhibit B).

Pl.'s Exhibit H (First Revised Assignment and Assumption Agreement).

On March 10, 2011, after counsel for Praxair reviewed the draft and communicated its concerns with the proposed changes, 1120 sent Praxair an eight-page second revised draft of the assignment. Apria did not offer any comments. Praxair, Apria and 1120 executed an assignment of the lease on March 15, 2011. The warranty clause in the final version reads as follows:

> 4. Warranty. Assignor represents and warrants to Assignee as of the date hereof and as of the Assignment Effective Date that the Lease has not been terminated, modified or amended, the Lease is in full force and effect, the Lease has not been assigned or otherwise encumbered and, no default has occurred or is continuing, and no event has occurred or condition exists which would, with the giving of notice or the expiration of any grace period, constitute a default under the Lease.

Apria Appx. 89 (Assignment and Assumption Agreement) at ¶ 4.

1120 contends that the phrase "the Lease has not been terminated," added by Hankin, nullified the expiration notice and extended the lease for an additional one year term. Apria maintains that it did not.

The lease required Apria to leave the Premises in its original condition. 1120 claims that Apria, who left the Premises at the end of November 2011, did not restore the Premises to its original condition. It contends that this failure extended the lease beyond the November 2011 expiration date. 1120 has not returned Apria's $22,130.00 security deposit.

4

**Discussion**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In examining the motions, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003) (citation omitted).

1120 contends that it is entitled to judgment in its favor because the lease did not expire at the end of its initial term on November 30, 2011, but automatically renewed for an additional one year term. It relies on language in the assignment executed by 1120, Praxair and Apria. It argues that the assignment's warranty provision, which stated that "the Lease has not been terminated," nullified and superseded the timely expiration notice sent by Praxair. 1120 argues that the phrase meant that Praxair had not taken any steps to terminate the lease.

In its motion for summary judgment, Apria asserts that the assignment's warranty provision is clear. It contends that the phrase did not operate to extend the lease beyond its November 30, 2011 expiration date. It was, according to Apria, only a confirmation that the lease was in effect at the time of the assignment.

The full warranty provision reads:

> 4. Warranty. Assignor represents and warrants to Assignee as of the date hereof and as of the Assignment Effective Date that the Lease has not been terminated, modified or amended, the Lease is in full force and effect, the Lease has not been assigned or otherwise encumbered and, no default has occurred or is continuing, and no event has occurred or condition exists which would, with the giving of notice or the expiration of any grace period, constitute a default under the Lease.

Apria Appx. 89 (Assignment and Assumption Agreement) at ¶ 4.

A contract is clear or unambiguous "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (citation omitted). In analyzing the contract, we must read the contract as a whole, putting its terms in context. *Engelhard Corp. v. N.L.R.B.*, 437 F.3d 374, 381 (3d Cir. 2006). Where the contract language is clear, we must construe the contract as a matter of law. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994).

The parties disagree over the meaning of the language. In support of its interpretation, 1120 relies on a linguistics expert who opines that the best interpretation of the phrase is that "the Lease has not been terminated at all." Pl.'s Ex. 8 (Expert Report of Dr. Lawrence M. Solan) at 9. A contract is not made ambiguous because the parties offer varying interpretations. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (citation omitted).

Having carefully reviewed the assignment, we conclude that the language is unambiguous. The phrase "the Lease has not been terminated," read in context of the warranty provision and the assignment as a whole, warranted that the lease had not been terminated before the assignment was executed. It did not reference the lease's expiration notice. It did not, as 1120 argues, nullify Praxair's expiration notice.

The provision also states that the lease had not been modified or amended. This phrase made it clear that the lease's terms, including its expiration date, had not been changed. 1120's interpretation of the phrase and the warranty provision as a whole

contradicts the provision's plain terms. Accordingly, 1120 is not, and Apria is, entitled to summary judgment on this claim.

1120 also contends that it is entitled to summary judgment because Apria vacated the premises without restoring it to its original condition as required by the lease. It claims that Apria's failure to do so nullified the expiration notice and extended the lease beyond November 30, 2011. 1120 points to deposition testimony of two Apria employees responsible for ensuring that Apria's departure complied with the lease. One employee stated that he was not aware of Apria's lease with 1120 and that he "scanned the property to make sure . . . it was in decent shape" before Apria moved out. Pl.'s Ex. 4 (Deposition of Brendan Boyle) at 53: 5-11, 55: 1-3. The other employee testified that although he was responsible for Apria's compliance with the lease, he did not visit the premises before Apria left. Pl.'s Ex. 5 (Deposition of Robert Levitt) at 57: 8-11, 58: 9-12.

Hankin and 1120 rely on the same argument to defeat Apria's breach of contract claim. They argue that 1120 did not breach the lease by failing to return Apria's security deposit because Apria's failure to restore the premises forfeited the security deposit.

In response, Apria has offered testimony that it complied with the lease when it vacated the premises and that the employee responsible for ensuring its compliance believed the property had been restored to the condition it was in when Praxair first occupied it. Pl.'s Ex. 5 at 61: 20-62: 1. Whether Apria complied with its restoration obligations under the lease is an issue for the factfinder. Therefore, summary judgment will not be granted on this claim.

In moving for summary judgment on Apria's fraud claim, 1120 asserts that Apria failed to prove that it or Hankin engaged in fraudulent conduct by adding "terminated" to the assignment's warranty provision.  It contends that Apria's fraud in the inducement claim fails as a matter of law because the term was expressly stated in the lease assignment and sent to Apria for its review and approval before it executed the assignment.

To prove its fraud claim, Apria must demonstrate that 1120 and Hankin: (1) made a representation; (2) the representation was material to the transaction; (3) it was made falsely, with knowledge of its falsity or recklessness as to its truth or falsity; (4) it was intended to mislead Apria into relying on it; (5) Apria justifiably relied on the misrepresentation; and (6) Apria suffered injury proximately caused by its reliance. *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (citation omitted).  In other words, Apria must show that 1120 and Hankin made "a misrepresentation fraudulently uttered with intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Martin v. Hale Prods., Inc.*, 699 A.2d 1283, 1288 (Pa. Super. Ct. 1997) (citation omitted).

Apria's fraud claim rests on its argument that Hankin's insertion of "terminated" without flagging it was a misrepresentation that induced it into entering into the assignment.  It contends that Hankin committed fraud because he intended to assert later that the expiration notice had been nullified based on that language.

Throughout the litigation, Apria's theory was that Hankin had surreptitiously inserted the contested language into the assignment without marking it as a change.  At oral argument, Apria's counsel conceded that Apria knew about the language before it

8

signed the document.  Apria's associate general counsel, Raoul Smyth, who was responsible for reviewing the assignment, noticed the term "terminated" and did not understand it to nullify the lease's expiration notice.  In his deposition, Smyth testified that he interpreted the term to mean that "as of the date of [the assignment] nothing had occurred which would cause the lease to terminate prior to its scheduled expiration date."  Apria Appx. 156 (Deposition of Raoul Smyth) at 13: 16-23; *id.* 167 at 61: 2-14.

A claim for fraud in the inducement must be premised on "oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement."  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996).  Apria read, reviewed and agreed to the assignment's express terms.

As we have determined, the language is clear.  The provision warranted that the lease, as of the assignment's effective date, had not been terminated and was in full force and effect.  This is the meaning that Apria accorded to it.  There is nothing in the record to suggest that Hankin, at the time of the execution of the assignment, made a statement to the contrary.  *See Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 563 (E.D. Pa. 2003) ("Fraud in the inducement cases usually involve allegations that one party painted a 'false picture' of how the contract would operate.") (citation omitted).  In fact, Smyth stated that he did not discuss the interpretation or import of "terminated" with Hankin.  *See* Smyth Dep. at 79: 20-25 (Counsel for Apria: "[D]id you have any conversations with anyone about extending this lease at issue for an additional one-year term?"  Mr. Smyth: "No, I did not."  Counsel for Apria: "You didn't speak to Mr. Hankin about it?"  Mr. Smyth: "No."). Accordingly, 1120 and Hankin made no misrepresentation to Apria.

Additionally, Apria has not shown that 1120 and Hankin's conduct proximately caused it economic harm. *Eigen*, 874 A.2d at 1190. Apria contends that it suffered damages when it had to defend the state court confession of judgment action, in which 1120 sought a judgment based on its claim that Apria breached the lease which was extended by the warranty provision. It asserts that nearly $1,000,000 was frozen in its bank account and that it spent in excess of $100,000 defending the action. However, at the summary judgment stage in the state court, 1120 alternatively argued that Apria had breached the lease because it had failed to restore the premises – a failure that extended the lease beyond its November 30, 2011 expiration date. Apria's compliance with its restoration obligations is yet to be determined. Its expenses in the state court action may be a product, not of 1120 and Hankin's conduct, but of its failure to comply with its obligations under the lease. Therefore, Apria's fraud claim fails and 1120 is entitled to summary judgment.